JOHN P. WILLS, ETC., *v.* CHAS. S. LOCKNANE AND WIFE.

**Wills—Testamentary Capacity—Undue Influence.**

     The evidence was held to show that a testator at the time of the execution of his will possessed testamentary capacity, and that it was not the result of undue influence.

APPEAL FROM CLARK CIRCUIT COURT.

April 8, 1873.

OPINION BY JUDGE LINDSAY:

John P. Wills made and published his last will and testament on the 3d day of August, 1862, and departed this life in the year 1869. This paper was properly proved and admitted to record by the county court of Clark, the county in which the testator was domiciled at the time of his death.

Martha E. Locknane, a granddaughter of the testator (and the only child and representative of his deceased daughter, Martha E. Flynn), who was cut off by the will with one dollar, together with her husband, Charles S. Locknane, prosecuted an appeal from the order of the county court admitting the paper to probate.

Upon a trial in the circuit court of the issue of *Devisant vel non* the jury found that the paper in question was not the last will and testament of John P. Wills, deceased. A motion for a new trial was overruled, and judgment rendered directing the county court to set aside its order of probate. To reverse that judgment this appeal is prosecuted.

The contestants of the will claim

1st. That at the time of its execution the testator did not possess sufficient general capacity to make a legal testamentary disposition of his large estate.

2d. That he entertained towards Mrs. Locknane an insane aversion.

3d. That he was morally insane.

4th. That the execution of the paper was superinduced by the exercise over the testator of undue influence by certain members of his family.

The proof shows that Wills was and had been for twenty years a constant drinker. That on some occasions he drank to such excess as to disqualify himself for attending to business. Such debauches, however, were not frequent, and it is manifest that during this period he managed his business affairs prudently and successfully.

His mind was not comprehensive, but he possessed strong common sense, and notwithstanding his want of education and culture he does not seem to have been unmindful of his obligations to his family. That he was in the full possession of all his faculties, free

from the influence of liquor at the time the will was executed, is established by a decided preponderance of the testimony. That liquor was drunk at his house on that day, and that he drank some himself, is shown by the testimony of all the witnesses who speak on that subject, but the attempt to show that he was disqualified for the transaction of any kind of business at the house at which the will was written utterly failed.

It appears from the evidence of all the witnesses introduced by the propounders of the will, and from that of fully one-half of those offered by the contestants that Wills's mind was not impaired in 1862, and notwithstanding the opinion to the contrary, expressed by six or eight witnesses, several of whom base their conclusions not upon actual observation, but upon their ideas as to the effect of the continued use of intoxicating liquors, that he continued for five or six years thereafter to manage successfully his large estate.

We can not agree with counsel for appellees that he was not aware of the execution of the will. He told the person having possession of it that he thought of riding over and reading it, and directed him to show it to any of his children who might desire to see it. He spoke to one of appellee's witnesses about the contents of the will, and expressed fears that he had done Mrs. Locknane injustice, and also a disposition upon his part either to change its provisions or to provide for her and her family in some other way. The fact that he expressed a determination to cut Mrs. Locknane off without anything in case she persisted in the prosecution of the suit against her father, by no means proves that he had forgotten that he had already made a will by which she was pretermitted, but rather that he would not change it if she persisted in disregarding his wishes.

There is absolutely no evidence tending to show that he entertained towards Mrs. Locknane or her husband an insane aversion. He was certainly displeased at her marriage, but he expressed towards neither her nor her husband feelings of hostility or hatred. He (like men of his temperament sometimes do) doubtless determined that those of his family who would not respect his feelings and wishes should enjoy no part of his estate, but instead of hating his granddaughter it is shown by her own witness that his affection for her still continued to exist, and that he debated the propriety of changing his determination to disinherit her. This record utterly fails to show any offer or attempt upon the part of Mrs. Locknane or her husband to effect a reconciliation.

Nor can we conclude that the continued use of intoxicating liquors had so far blunted his sensibilities and destroyed his moral sentiments as to render him morally insane. In making his will he recognized the propriety of protecting his daughters against the improvidence of their husbands.

His regard for all the members of his family who yielded to him that degree of obedience and respect to which he conceived himself entitled, continued as long as he lived.

He was not the man to be influenced by his family, in the disposition of his estate, and the evidence rather tends to show that Dudley Flynn could not have controlled him in any matter of importance.

To set aside the will of John P. Wills, because he saw proper to disinherit his granddaughter, would be in effect to deny to a man of sound mind the right to make a will. This the courts of this state have not the legal right to do.

Impressed with the correctness that the testimony presented by this record shows satisfactorily that the testator was possessed of testamentary capacity at the time the paper in question was executed and was not influenced by prejudice, we are constrained to reverse the judgment of the circuit court and remand the cause to that court with instructions to render a judgment confirming the order of probate in the county court, and to certify that judgment to said last-named court.

*Tucker, Simpson, for appellant.*

*Breckenridge, Huston, Egminton, for appellees.*